UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN WEREDICK,                                Case No. 16-11694

         Plaintiff,                        Denise Page Hood
v.                                             U.S. District Judge

COMMISSIONER OF SOCIAL SECURITY,               Stephanie Dawkins Davis
                                               United States Magistrate Judge

         Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 12)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On May 11, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing social security disability benefits. (Dkt.

1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Denise Page Hood referred this matter to the undersigned magistrate judge

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claims. (Dkt. 3). The matter is before the Court on cross-motions for summary

judgment. (Dkt. 10, 12).

    B.    <u>Administrative Proceedings</u>

On November 12, 2013, plaintiff protectively filed claims for period of

disability and disability insurance benefits, along with an SSI application, alleging disability beginning December 3, 2012. (Dkt. 8-2, Pg ID 43). The Commissioner initially denied plaintiff's disability application on January 22, 2014. *Id*. Plaintiff then requested an administrative hearing, and on March 12, 2015, she appeared without counsel before Administrative Law Judge ("ALJ") Timothy C. Scallen, who considered his case *de novo*. (Dkt. 8-2, Pg ID 59-81). In an April 10, 2015 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at Pg ID 40-54. The ALJ's decision became the final decision of the Commissioner on March 9, 2016, when the Social Security Administration's Appeals Council denied plaintiff's request for review. *Id*. at Pg ID 26-31.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** back to the Commissioner for further proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

On the alleged disability date, plaintiff was 52 years old, which falls into the category of an individual closely approaching advanced age. (Dkt. 8-2, Pg ID 52). Plaintiff has past relevant work as a heavy equipment operator, which is

2

considered medium work, with a specific vocational preparation of 6. *Id*. Plaintiff suffers from status-post 2013 lumbar partial discectomy and left lumbar spinal radiculopathy at L5-S1. (Dkt. 8-2, Pg ID 45). Plaintiff stopped working sometime after a motor vehicle accident caused his back injuries in 2012. (Dkt. 8-2, Pg ID 45, 47, 64).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the alleged onset date. (Dkt. 8-2, Pg ID 45). At step two, the ALJ found that plaintiff had the following severe impairments: history of December 3, 2012 motor vehicle accident, status-post 2013 lumbar left-sided partial discectomy and left lumbar spinal radiculopathy at L5-S1. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. *Id*. at Pg ID 45-46. The ALJ determined that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he must have a sit/stand option, he can occasionally push and pull with the left lower extremity; cannot operate foot controls with the left lower extremity; can occasionally climb stairs and ramps; cannot climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid unprotected heights and moving machinery; must use a cane to ambulate, must have a

> sit/stand option and can perform no work on uneven,
> slippery, or rough surfaces.

*Id.* at Pg ID 46.  At step four, the ALJ determined that plaintiff could not perform

any past relevant work.  *Id*. at Pg ID 52.  At step five, the ALJ found that, given

plaintiff's age, education, work experience and RFC, there are sufficient jobs that

exist in the national economy that plaintiff can perform.  *Id*.  Thus, the ALJ

concluded that plaintiff has not been under a disability from the alleged onset date

through the last date insured.  *Id*. at Pg ID 53.

## III.  DISCUSSION

### A.  Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

B. <u>Analysis</u>

1. Lack of Medical Opinion on Equivalence

Although the errors raised by plaintiff and addressed below may not justify remand by themselves, the Court's review of the administrative record revealed an error that does require remand. Specifically, the administrative record lacks an expert opinion on whether plaintiff's physical impairments medically equal any listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Court

may raise such an obvious and significant legal error *sua sponte*. *See e.g.*, *Trainor v. Comm'r of Soc. Sec.*, 2014 WL 988993, at \*23-24 (E.D. Mich. Mar. 13, 2014) (Berg, J.) (citing *Fowler v. Comm'r of Soc. Sec.*, 2013 WL 5372883, at \*3 n. 5 (E.D. Mich. Sept. 25, 2013) (finding no error in magistrate judge *sua sponte* raising the absence of an expert opinion on equivalence).[1] As explained in *Trainor*, Social Security Ruling 96-6p[2] and many decisions from this judicial district, require a medical expert's opinion on the issue of equivalence:

> [L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

*Id*. at \*24 (quoting SSR 96-6p, 1996 WL 374180, at \*3 (1996) and citing *Fowler*, 2013 WL 5372883, at \*4 (collecting cases and remanding because there was no expert medical opinion on the issue of equivalence); *Manson v. Comm'r of Soc.*

---

[1] As explained in *Fowler v. Comm'r of Soc. Sec.*, 2013 WL 5372883, at \*3 (E.D. Mich. Sept. 25, 2013), the Sixth Circuit has also previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been specifically objected to, and this practice is not uncommon in this District. *See Gwin v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 102 (6th Cir. 2004); *see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at \*7 n. 5 (E.D. Mich. Feb. 13, 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), adopted by 2013 WL 878918 (E.D. Mich. Mar. 8, 2013) (Friedman, J.).

[2] Social Security Rulings do not have the force of law, but they are binding on all components of the Agency, as provided by 20 C.F.R. 402.35(b)(1). *Carter v. Colvin*, 220 F.Supp.3d 789, 795 (E.D. Ky. 2016); *see also Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9 (1990) ("Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'").

*Sec.*, 2013 WL 3456960, at *11 (E.D. Mich. July 9, 2013) (Cohn, J.) (remanding for an expert opinion at step three). Although the Sixth Circuit has not directly addressed the issue, it has reasoned that, "[g]enerally, the opinion of a medical expert is required before a determination of medical equivalence is made." *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995); *see also*, *Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (The lack of an expert opinion on whether the claimant's physical impairments (alone or combined with her mental impairments) medically equal any listed impairment is clear error and requires remand where the record is not so lacking in medical findings that a finding of equivalence is implausible.); *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.") (Cohn, J.); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated) (Ludington, J.). Indeed, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [Plaintiff's] impairments ... in combination equal one of the Commissioner's listings." *Sheeks v. Comm'r of Soc. Sec.*, 2015 WL 753205, at *7 (E.D. Mich. Feb. 23, 2015) (Duggan, J.) (citation omitted).

Social Security Ruling 96-6p provides guidance as to the type of documents

that may constitute a medical expert's opinion on the issue of equivalence: the signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other various documents, on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review. *Trainor*, at *24 (citing SSR 96-6p, 1996 WL 374180, at *3 (1996)). In this case, there are no documents in the record reflecting that a qualified medical advisor assessed medical equivalence at any stage of review. The Disability Determination and Transmittal form was not signed by a physician. (Dkt. 8-3, Pg ID 99-100). The Disability Determination Explanation form only contains an assessment of plaintiff's physical impairments by a single decision-maker, not any medical advisor. (Dkt. 8-3, Pg ID 83-98). Thus, there is no medical opinion in this record on the issue of equivalence, as required by SSR 96-6p.

While the undersigned recognizes that the failure to obtain a medical opinion concerning equivalence can be harmless error in some circumstances, this is not one of those occasions. *See e.g.*, *Bukowski v. Comm'r of Soc. Sec.*, 2014

WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014). For example, the error may be harmless where "the evidence does not demonstrate the possibility that [the plaintiff] could meet the criteria of a listed impairment." *Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. July 31, 2015), adopted by 2015 WL 5612016 (Sept. 23, 2015). As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' at Step Three had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments." *Bukowski*, 2014 WL 4823861, at *5. In *Bukowski*, the failure to obtain an opinion on equivalence was deemed harmless "given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability." *Id.* at *6. Here, unlike the facts in *Bukowski*, plaintiff has made no such admissions. In fashioning the RFC without the assistance of a medical opinion on equivalence, the ALJ carved out several limiting functions based on his own interpretation of the medical records.

In *Leveque*, the step three error was found harmless because plaintiff failed to provide medical evidence showing that she met the criteria in the listings for her physical impairments. However, as explained in *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004), "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."

*See also* 20 C.F.R § 404.1526(b).  Thus, *Leveque* does not seem to reach the precise issue presently before the Court.  Notably, "courts generally should exercise caution in conducting harmless error review" of a step three finding because harmlessness "may be difficult, or even impossible, to assess ..." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 657-658 (6th Cir. 2009).

While contrary authority exists, in the view of the undersigned, many of these cases improperly conflate the determination of <u>meeting</u> a Listing with <u>equaling</u> a Listing.  The distinction is well-explained in *Stratton v. Astrue*, 987 F.Supp.2d 135, 147 (D. N.H. 2012), where the court observed the following:

> SSR 96-60(sic) treats equivalence determinations differently from determinations that an impairment meets a listing, requiring expert-opinion evidence from the former buy not the latter.  Judge Ellison explains why:
>
> The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments *meet* the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are *equivalent* to the Listings. [citation omitted] This is presumably because making an equivalency finding requires difficult medical judgments as to the severity of a claimant's ailments, juidgments that are greatly assisted by consulting an expert.

Citing, *Galloway v. Astrue,* 2008 WL 8053508 at *5 (S.D. Tex. May 23, 2008).

An examination of the ALJ's step three analysis here illustrates this critical difference and shows why the court, like the ALJ, is unable to discern medical

equivalence without the assistance of a medical advisor:

> The undersigned has considered whether the claimant meets or equals the requirements of listing 1.04 (Disorders of the spine). That listing is met in part where an individual demonstrates an "inability to ambulate effectively." However, the record shows that the claimant walks with, at most, a mildly antalgic gait, without the need for an assistive device. (Exhibit 4F, p. 1-13). He is therefore apparently able to ambulate sufficiently to independently initiate, sustain, or complete activities. Since the record also does not contain any evidence of nerve root compression, or of spinal arachnoiditis confirmed by operative note or a tissue biopsy, the claimant does not meet the requirements of listing 1.04.

(Dkt. 8-2, Pg ID 46). Plainly, the ALJ merely determined that plaintiff's particular conditions did not meet Listing 1.04 (as is within his purview), and concluded without further analysis that plaintiff's condition also did not medically equal the Listing. Yet, drawing that conclusion without a medical opinion is contrary to the regulations, which provide that a medical opinion will be considered in assessing equivalence:

> When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 404.1560(c)(1)). *We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.* (See § 404.1616.)

20 C.F.R. § 404.1526(c) (emphasis added). The caution in *Rabbers* that "courts generally should exercise caution in conducting harmless error review" of a step three finding because harmlessness "may be difficult, or even impossible, to assess" applies here because neither the ALJ nor this Court possesses the medical expertise to interpret the significant medical evidence in the record to determine if plaintiff's impairments equal the applicable listings. *See Allor v. Colvin*, 2016 WL 7650798, at *6 (E.D. Mich. Nov. 28, 2016) (Stafford, M.J.), report and recommendation adopted, 2017 WL 2350061 (E.D. Mich. May 31, 2017) (Cox, J.).

For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence regarding plaintiff's physical impairments during the relevant period. Given that the opinion of a medical advisor must be obtained, the ALJ will necessarily be required to re-assess plaintiff's credibility and the RFC findings in full after such an opinion is obtained. As such, it is not necessary to address plaintiff's arguments regarding his credibility, RFC, and step five.[3]

---

[3] As to plaintiff's contention that the ALJ failed to fully develop the record with Dr. Martin Kornblum's treatment records after January 2014 and committed a concomitant error in assessing plaintiff's credibility by concluding that plaintiff did not continue with treatment after January 2014, nothing precludes plaintiff from submitting those medical records and updated medical opinions from Dr. Kornblum after remand.

2.     Treating physician opinions

Plaintiff also raises an error regarding the ALJ's assessment of his treating physician's opinions.  In the report from an office visit of January 31, 2014, Martin Kornblum, M.D. offered the following opinion: "I do think that with or without further back surgery he does have a guarded prognosis for the future with likely long-term disability and restrictions from this injury."  (Dkt. 8-7, Pg ID 397).  The ALJ afforded this opinion "little weight" because the issue of disability and "a claimant's ability to work is reserved for the Commissioner. . . . [and] the doctor's opinion is inconsistent with the evidence as a whole, including the doctor's own examination records, which show good left leg strength and improved ability to walk, improved postural abilities, and the claimant's own statements that his pain level had improved greatly following his surgery. . . . [moreover] the doctor's conclusion is [] inconsistent with the fact that the claimant has not sought any medical treatment in well over a year, which again belies his extraordinary pain complaints."  (Dkt. 8-2, Pg ID 51).

Plaintiff acknowledges that the issue of disability is indeed reserved for the Commissioner, SSR 96-5p, 1996 WL 374183, but points out that SSR 96-5p also directs ALJs to "make every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."  *Id*. at 2.  According to

plaintiff, it is not clear from Dr. Kornblum's opinion why he thought plaintiff would suffer "likely long-term disability." Plaintiff maintains that the ALJ should have made an effort to recontact the surgeon and asserts that the harmfulness of his failure to do so is apparent from Exhibit A, attached to his summary judgment brief.

Doctor Kornblum also noted a "guarded prognosis" and likely long-term restrictions "with or without" further surgery. According to plaintiff, this constitutes a medical opinion. 20 C.F.R. § 404.1527(a)(2). In weighing this opinion, the ALJ had to adhere to 20 C.F.R § 404.1527(c) and provide "good reasons" for giving the opinion "little weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013). Plaintiff says the ALJ's reasoning is problematic because the ALJ knew or should have known that plaintiff had obtained additional medical treatment and because the four other stated reasons to discount the opinion (good left leg strength, improved ability to walk, improved postural abilities, and the claimant's pain level) are taken selectively from the record. There are numerous contrary notes and findings, including: injections not providing relief (Dkt. 8-7, Pg ID 306); physical therapy only "mildly beneficial" *id.*; complaints of numbness and tingling in the left lower extremity *id.*; complaints of pain, numbness, and tingling down the right leg (Dkt. 8-7, Pg ID 307); an antalgic gait *id.*; increasing pain three months post-surgery (Dkt. 8-7, Pg ID 310);

16

"moderate tenderness to palpation about the lumbosacral spine" *id*.; report of leg pain actually worse since surgery (Dkt. 8-7, Pg ID 313); and complaint of foot dropping (Dkt. 8-7, Pg ID 307). And, perhaps most significant, the ALJ failed to weigh Dr. Kornblum's opinion against the MRI taken just two weeks prior, which showed numerous problems, including bulging discs, an annular tear, and canal and bilateral foraminal stenosis. (Dkt. 8-7, Pg ID 391). Thus, plaintiff insists that the ALJ's reasoning for rejecting Dr. Kornblum's opinions are not sufficient.

According to the Commissioner, the ALJ gave several reasons for assigning Dr. Kornblum's opinion little weight. (Dkt. 8-2, Pg ID 51). First, the Commissioner maintains that plaintiff is mistaken in asserting that it is relevant for the Court to consider whether the ALJ gave "good reasons" for discounting that opinion. As the ALJ noted, the opinion pertains to the ultimate issue of disability (Dkt. 8-2, Pg ID 51), and opinions on that issue are not "medical opinion[s] requiring consideration," as that issue is reserved to the Commissioner. *See Allen v. Comm'r of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009); 20 C.F.R. §§ 404.1527(d), (d)(1), (d)(3) & 416.927(d), (d)(1), (d)(3); *see also Hall v. Comm'r of Social Security*, 148 Fed. Appx. 456, 464 n. 5 (6th Cir. 2005) (physician opinion on the ultimate issue of disability "deserves no deference because it is a legal determination to be made by the ALJ"). Thus, the Commissioner asserts that plaintiff is incorrect in asserting that this is a "medical opinion" as defined in 20

C.F.R. § 404.1527(a)(2). *See id*. In fact, the opinion plainly does not satisfy that definition since it does not address "what [plaintiff] can still do despite [his] impairment(s)." 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2); *see Allen*, 561 F.3d at 651 n. 3 (physician statement that does not "address[] the specific extent of [the claimant's] limitations" is not a "medical opinion" as defined in § 404.1527(a)(2)). Thus, according to the Commissioner, plaintiff's citation to § 404.1527(c) and its "good reasons" requirement is inapposite because §§ 404.1527(c) and 416.927(c) on their face only apply to the weighing of "medical opinions."

The Commissioner also asserts that even if the Court were to improperly apply the "good reasons" requirement of §§ 404.1527(c) and 416.927(c) to the ALJ's weighing of Dr. Kornblum's opinion, it would still be proper to uphold that weighing. First, plaintiff challenges the ALJ's reference to the lack of treatment after January 2014, but as previously addressed, the ALJ reasonably relied on plaintiff's attorney's statement that the administrative record was complete (Dkt. 8-2, Pg ID 62), and plaintiff does not challenge the ALJ's statement that the administrative record before him contained no treatment notes after January 2014. (Dkt. 8-2, Pg ID 49). Second, plaintiff argues that the ALJ engaged in cherry-picking in finding that substantial treatment records and plaintiff's own statements were inconsistent with Dr. Kornblum's opinion. However, the Sixth

Circuit rejects, in essentially summary fashion, claimants' arguments that the ALJ cherry-picked the evidence, noting in particular that "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). According to the Commissioner, it cannot be fairly said that the ALJ failed to take into account evidence that, by itself, might be considered supportive of plaintiff's disability claim. In fact, the ALJ expressly considered much of the evidence that plaintiff advances here including: plaintiff's reports that injections provided limited relief (Dkt. 8-2, Pg ID 48); plaintiff's complaints of numbness and tingling in the left lower extremity (Dkt. 8-2, Pg ID 47, 49); a "slightly" or "somewhat" antalgic gait (Dkt. 8-2, Pg ID 48-50); plaintiff's complaints of worsening pain on October 3 and November 12, 2013 (Dkt. 8-2, Pg ID 49; Dkt. 8-7, Pg ID 310, 313); foot drop (Dkt. 8-2, Pg ID 49, 51); and the January 15, 2014 lumbar spine MRI (Dkt. 8-2, Pg ID 49). Significantly, plaintiff points to no requirement that the ALJ specifically mention such evidence when weighing an opinion. To the contrary, as the Seventh Circuit has found, it is self-evident that "it is proper to read the ALJ's decision as a whole," and that "it would be a needless formality to have the ALJ repeat substantially similar factual analyses." *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004).

The Commissioner maintains that plaintiff's assertion that SSR 96-5p required the ALJ to recontact Dr. Kornblum before discounting his opinion

because the opinion was allegedly unclear, is simply wrong. Rather, the Sixth Circuit holds that the duty under SSR 96-5p to recontact a treating physician is only triggered where the administrative record contains insufficient information to reach a disability decision - not where the ALJ rejects the limitations recommended by the physician, as happened here. *Ferguson v. Comm'r of Soc. Sec*, 628 F.3d 269, 274-75 (6th Cir. 2010). Plaintiff does not argue that there was insufficient information for the ALJ to reach a disability determination; in any event, there was indeed sufficient information. The Commissioner maintains that the ALJ's discounting of Dr. Kornblum's opinion was reasonable and the Court should uphold that weighing.

In the view of the undersigned, the Commissioner is correct. Dr. Kornblum's "opinions" were not so clearly "medical opinions" as that term is used in the regulations, or of a nature that the ALJ was required to give them controlling weight or even subject them to the good reasons analysis. The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians ... that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Dr. Kornblum opined that: "I do

think that with or without further back surgery he does have a guarded prognosis for the future with likely long-term disability and restrictions from this injury." (Dkt. 8-7, Pg ID 397). Announcing a guarded prognosis and unnamed restrictions, without any explanation as to how that translates in terms of a functional analysis, essentially amounts to an opinion on a matter reserved to the Commissioner (i.e. disability); and does little to inform the ALJ regarding plaintiff's impairments or resulting limitations and restrictions. Thus, Dr. Kornblum's statement is not properly characterized as a medical opinion and, accordingly, the ALJ was not required to give it controlling weight or subject it to a good reasons analysis. *See e.g.*, *Riggs v. Comm'r of Soc. Sec.*, 2016 WL 3437537, at *4 (W.D. Mich. June 23, 2016) (Opinion that plaintiff was disabled and unable to work is not a medical opinion); *West v. Astrue*, 2011 WL 825791, at *8 (E.D. Tenn. Jan. 19, 2011) ("[I]t was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it was not a 'medical opinion' as defined by 20 C.F.R. § 416.927(a)(2)."); *Koller v. Astrue*, 2011 WL 5301569, at *5 (E.D. Ky. Nov. 3, 2011) (finding that the ALJ is not required to defer to statements by physicians concerning matters reserved to the Commissioner).

Plaintiff also asserts that the ALJ was required to recontact Dr. Kornblum if the bases for his non-medical opinions were not clear. Both parties both cite the the two-part test from *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269 (6th Cir.

2010).  However, a mandatory duty to re-contact a treating physician was eliminated, effective March 26, 2012, after *Ferguson* was decided.  *See How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10651-01 (Feb. 23, 2012) (codified at 20 C.F.R. § 404.1520b).  Under the new rule, the decision to re-contact a treating source is a matter left to the ALJ's discretion.  20 C.F.R. § 404.1520b(b)(2)(i) (2017)[4]; *see also Hollis v. Comm'r of Soc. Sec.*, 2015 WL 357133, *24 (E.D. Mich. Jan. 27, 2015) ("New regulations became effective on March 26, 2012, rendering the decision to recontact discretionary."); *Cradle v. Colvin*, 2014 WL 6633201, at *3 (E.D. Pa. Nov. 24, 2014) ("Courts interpreting 20 C.F.R. § 404.1520b since the modification of the recontact requirement have also emphasized that the decision to recontact a medical source is left to the discretion of the ALJ.").[5]  Thus, while it might have been helpful to do so, the ALJ was not required to recontact Dr. Kornblum.  As noted above, nothing precludes plaintiff from offering medical opinion evidence from Dr. Kornblum, along with updated medical records on remand.  *See* note 3, *supra*.

---

[4]  This regulation was updated in March, 2017.  Under the prior version, effective in 2012, the citation for this section was 20 C.F.R. § 404.1520b(c)(1).  Substantively, the provisions are the same.

[5]  While SSR 96-5p provides that an ALJ should make reasonable efforts to contact a treating physician for clarification "when 'the evidence does not support a treating source's opinion . . . and the adjudicator cannot ascertain the basis of the opinion from the record,'" *see Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting SSR 96-5p, 1996 WL 374183, at *6), SSR 96-5p appears to be superceded by the 2012 amendments to 20 C.F.R. § 404.1520b.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** back to the Commissioner for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 4, 2017     s/Stephanie Dawkins Davis
            Stephanie Dawkins Davis
            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 4, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

            s/Tammy Hallwood
            Case Manager
            (810) 341-7887
            tammy_hallwood@mied.uscourts.gov